IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| MuscleDriver USA, LLC, | ) | C/A No. 0:11-1777-MBS-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Robert Chandler Smith, and Web Ninjas, LLC, | ) | |
| Defendants. | ) | |

The Plaintiff, MuscleDriver USA, LLC ("MuscleDriver") filed this action against Defendant Robert Chandler Smith ("Smith"), who is self-represented, and Defendant Web Ninjas, LLC ("Web Ninjas"), alleging false designation of origin and unfair competition in violation of the Lanham Act, § 43(a), 15 U.S.C. § 1125(a), as well as state law claims for unfair trade practices under S.C. Code Ann. §§ 39-5-10, et seq., common law unfair competition, and injunction. This case is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Smith's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or Rule 12(b)(3) for improper venue; or in the alternative, to transfer the action to the United States District Court, Western District of Texas, Austin Division, pursuant to 28 USC § 1406(a) or § 1404(a). (ECF No. 14.) MuscleDriver filed a response in opposition to Smith's motion (ECF No. 18), Smith filed a reply (ECF No. 19), and MuscleDriver filed a sur-reply (ECF No. 22). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be denied.

## BACKGROUND

MuscleDriver is a privately held limited liability company organized under the laws of the State of South Carolina with headquarters and principle place of business in Fort Mill, South Carolina. MuscleDriver is a distributor of specialty strength and conditioning products and its products are advertised and sold over the internet. Defendant Smith is a resident of Austin, Texas. Defendant Web Ninjas is a limited liability company organized under the laws of the State of Delaware on March 16, 2011. Smith is the sole manager and member.[1] (ECF No. 14-1 at 3, 9.)

This case arises out of an internet business relationship gone bad. At some point prior to 2009, Smith, who attests that he has never been to South Carolina, created and began operating a website at the domain www.buyweightliftingshoes.com. (Smith Decl. ¶¶ 3, 20, ECF No. 14-2 at 1, 2.) Smith states that on the website, "I drafted and posted reviews of various weightlifting shoes. The site also contained 'affiliate' links to the sellers of the reviewed shoes through the sellers'

---

[1] To the extent that Smith is self-represented and argues for dismissal or transfer on behalf of Web Ninjas in Section V of his memorandum (ECF No. 14-1 at 12), it is well settled that *pro se* litigants, regardless of the nature of their connection to a corporation as an officer or shareholder, cannot legally represent corporations in this court. Corporations may only appear in this federal court and litigate through a licensed attorney who is formally admitted to practice and in good standing with this court. See Days Inn Worldwide, Inc. v. JBS, Inc., No. 4:08-cv-1771-TLW-TER, 2010 WL 625391 (D.S.C. Feb.19, 2010); see also First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1290 (Fed. Cir. 1999) (*pro se* actions by non-attorneys on behalf of corporations "fail for lack of standing"); Pridgen v. Andresen, 113 F.3d 391, 392-93 (2d Cir. 1997) (*pro se* litigant may not represent corporation, estate, partnership, or "his or her minor child"); Estate of Kerner v. United States, 895 F.2d 1159, 1162 n.3 (7th Cir. 1990).
  Furthermore, an entry of default was entered against Web Ninjas in this case on September 19, 2011. (ECF No. 12.) As a result, Web Ninjas has lost its standing to appear and is deemed to have admitted all well pleaded allegations of fact in the Complaint. See Fed. R. Civ. P 54(b); Frow v. De La Vega, 82 U.S. (15 Wall.) 552 (1872) (discussing effect of default as to one defendant in action involving several defendants alleged to be jointly and severally liable); Hudson v. Peerless Ins. Co., 374 F.2d 942, 945 (4th Cir. 1962) (discussing effect of Frow when co-defendants are "closely interrelated"); Nishimatsu Constr. Co. v Houston Nat'l Bank, 515 F.2d 1200 (5th Cir. 1975).



affiliate programs." (Id. at ¶ 21, ECF No. 14-2 at 2.) Under affiliate programs, a party seeking to become an affiliate generally signs up with a retailer online, is given a tracking code, and collects a commission from the retailer on "click-through" sales that flow from the affiliate site. (Id. at ¶ 22, ECF No. 14-2 at 2.) In November 2009, Smith contacted MuscleDriver by e-mail, and the parties exchanged information about the MuscleDriver affiliate program. (ECF No. 18-1 at 8, 9.) Thereafter, Smith states that "I entered into an affiliate agreement with plaintiff . . . by signing up online then by agreeing to [MuscleDriver]'s Affiliate Terms and Conditions by clicking a check-box at the bottom of the page." (Smith Decl. ¶ 23, ECF No. 14-2 at 3.) Although MuscleDriver's location and address is identified on its website that Smith visited to establish the affiliate agreement, Smith states that he "only learned that [MuscleDriver] was in South Carolina after receiving his first commission check," which was mailed from the MuscleDriver headquarters. (Id. at ¶ 25, ECF No. 14-2 at 3.) He had periodic communications with MuscleDriver and received monthly commission checks. (Id. at ¶ 11, ECF No. 14-2 at 2.) In 2010, Smith initiated a second, separate wholesale agreement with MuscleDriver in which he received commissions for advertising and selling MuscleDriver products from a different website, www.musclesandcurves.com. In March 2011, a dispute arose between the parties over a product review posted on www.buyweightliftingshoes.com, and MuscleDriver terminated its relationship with Smith. (Id. at ¶¶ 28-30, ECF No. 14-2 at 3.) In response to the termination and communications about the dispute, Smith removed some content from www.buyweightliftingshoes.com, but continued to post other content related to MuscleDriver and its products on the site, as well as the disputed review. (Id. at ¶ 32, ECF No. 14-2 at 4.) He also then formed Web Ninjas, LLC on March 16, 2011. (Id. at ¶ 33, ECF No. 14-2 at 4.) Five months later, on August 15, 2011, Smith took www.buyweightliftingshoes.com offline. (Id. at ¶ 34, ECF

PJG

No. 14-2 at 4.) During the eighteen-month relationship between the parties, Smith's websites generated more than $100,000 in sales of MuscleDriver's products, all for products that shipped from MuscleDriver's facility in South Carolina. Some of the sales through Smith's websites were to customers in South Carolina. (Hess Decl. ¶¶ 5, 7-8, ECF No. 18-1 at 4; Invoices, ECF No. 18-1 at 15-26.) MuscleDriver majority owner and president Brad Hess further attests that all of its witnesses and documents related to this case are in South Carolina. (Hess Decl. ¶¶ 14-16, ECF No. 18-1 at 5-6.)

On July 22, 2011, MuscleDriver filed the Complaint in this action, and summons were issued to the defendants. (ECF Nos. 1, 4, & 5.) The Affidavit of Service to Web Ninjas shows receipt by personal delivery to Scott Sharp, managing agent for the company, on August 18, 2011. (ECF No. 9.) On September 15, 2011, Smith waived service. Web Ninjas did not timely answer, and on September 16, 2011, MuscleDriver filed a request for entry of default against Web Ninjas. (ECF No. 11.) On September 19, 2011, the Clerk entered default, and Web Ninjas has not moved under Federal Rule 55(c) to set aside the default. On October 11, 2011, before his deadline to answer, Smith filed this motion to dismiss or to transfer venue on behalf of himself and Web Ninjas. For the reasons stated in footnote one, the analysis that follows is specific to Defendant Smith.

## DISCUSSION

A.  **Personal Jurisdiction**

Smith has moved for dismissal under Rule 12(b)(2) for lack of personal jurisdiction arguing that there is no general jurisdiction because his contacts with South Carolina were "nominal at best," and there is no specific jurisdiction because his actions and relationship with MuscleDriver do not provide a "sufficient nexus" with the state. (ECF No. 14-1 at 5, 7.) MuscleDriver alleged in its

Complaint that the court has personal jurisdiction because Smith "has conducted business and committed wrongful acts within this judicial district in that he authorized, approved, directed and/or participated in the infringing activities alleged herein." (Compl. ¶ 7, ECF No. 1 at 3.) The plaintiff has the burden of proof when a defendant challenges personal jurisdiction. See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). When the court addresses the issue on the pleadings without a hearing, "the burden on the plaintiff is simply to make a prima facie showing of a jurisdictional basis in order to survive the jurisdictional challenge." Combs v. Bakker, 886 F.2d 673, 675 (4th Cir. 1989). In deciding such a motion, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. at 676.

Two conditions must be satisfied to validly assert personal jurisdiction over a nonresident defendant. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp., 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute provides:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
> (1) transacting any business in this State;
> (2) contracting to supply services or things in the State;
> (3) commission of a tortious act in whole or in part in this State;
> (4) causing tortious injury or death in this State by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

>(5) having an interest in, using, or possessing real property in this State;
>(6) contracting to insure any person, property, or risk located within this State at the time of contracting;
>(7) entry into a contract to be performed in whole or in part by either party in this State; or
>(8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(a). Courts have construed South Carolina's long-arm statute to extend to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the dual jurisdictional requirements collapse into a single constitutional inquiry as to whether defendants have "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" McNeil v. Sherman, No. 2:09-cv-979-PMD, 2009 WL 3255240, *2 (D.S.C. Oct. 7, 2009) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted)). Minimum contacts exist if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1990). The analysis depends on whether general or specific jurisdiction is alleged. See generally ESAB Group v. Centricut, 126 F.3d 617, 623-24 (4th Cir. 1997). General jurisdiction applies when a defendant's activities in the state are "continuous and systematic," even if they do not relate to the specific conduct giving rise to the complaint. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984). However, when a complaint arises directly out of the defendant's contacts with the forum, a court may seek to exercise specific jurisdiction on proof that the defendant purposefully directed activities toward the state and the litigation results

PJG

from alleged injuries that arise out of, or relate to, those activities. See id. at 414. Here, MuscleDriver argues that Smith is subject to specific jurisdiction.

When evaluating the propriety of exercising specific jurisdiction, the Fourth Circuit has applied a three-part test: (1) whether and to what extent the defendant "purposely availed" itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." Nolan, 259 F.3d at 215-16 (citing Helicopteros, 466 U.S. at 415-16, and Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 476-77 (1988)).

To determine whether a defendant has purposefully availed itself of the privileges of the forum state, significant factors in the test typically include: a defendant's physical presence in the forum state, the extent of negotiations in the forum state, the extent to which the contract was to be performed in the forum state, and who initiated the relationship. Mun. Mortg. & Equity v. Southfork Apartments Ltd. P'ship, 93 F. Supp. 2d 622, 626 (D. Md. 2000). The central question behind the inquiry is whether a defendant has performed purposeful acts in the forum to create a substantial relationship with the forum state. See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451 (4th Cir. 2000); ESAB Group, 126 F.3d at 623.

Discussing factors against finding personal jurisdiction, Smith argues that he has never been to South Carolina, he only learned that MuscleDriver was in the state after he got his first commission check, and his only contacts with the state were (1) his agreements with MuscleDriver, (2) "his periodic online contacts with MuscleDriver," and (3) his "periodic receipt of commission payments." (ECF No. 14-1 at 5-7.) In support of his arguments, Smith relies on Stover v.

O'Connell Assocs., Inc., 84 F.3d 132 (4th Cir. 1996), which found insufficient contacts when nonresident buyers merely ordered products and services online from a forum state. Smith also relies on other personal jurisdiction cases in which courts found that posting information on the internet was not sufficient to subject the author to personal jurisdiction all states in which the information was accessed. See ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707 (4th Cir. 2002); Young v. New Haven Advocate, 315 F.3d 256 (4th Cir. 2002).

Nevertheless, drawing all reasonable inferences arising from the pleadings and related proof in MuscleDriver's favor, the court finds that MuscleDriver has made a *prima facia* showing of minimum contacts to establish this court's personal jurisdiction over Smith. The first question is whether Smith purposefully availed himself of the benefits of doing business in the state. As an initial matter, "physical presence is no longer a necessary or essential part of negotiating, agreeing to, or even performance of a commercial contract." McNeil, 2009 WL 3255240, at * 5. Further, this situation is not analogous to the cases cited by Smith because, far from being a single, random contact involving viewing of an internet posting or the mere exchange of money for goods, Smith initiated contact with a South Carolina company and maintained a complex, active business relationship for an extended period of time. First, it is undisputed that Smith made the initial contact by e-mail inquiring about MuscleDriver's affiliate program, and initiated the contract by accessing the MuscleDriver website and accepting the terms of the agreement. Although the website displaying the MuscleDriver affiliate agreement did not state that the company was located in South Carolina, that information is clearly posted in other places on the site. Second, Smith acknowledges he was aware he was doing business with a South Carolina company after MuscleDriver performed on the contract when it began to generate and mail its monthly commission checks to him from this

state. Further, as to performance and the ongoing relationship, the parties continued to operate under the contract for more than a year. MuscleDriver has produced the affidavit of its majority owner and President, Brad Hess, as well as invoices showing that South Carolina residents visited both of Smith's websites[2] and made orders, and that all shipments relating to product orders linked from Smith's websites were filled at MuscleDriver's Fort Mill facility. Additionally, during the course of the relationship, the parties continued regular communications, including negotiation of the separate, second wholesale agreement related to the website www.musclesandcurves.com. Smith contends MuscleDriver seeks to "obfuscate the issues" in this specific jurisdiction analysis by discussing irrelevant facts, and that the court should disregard anything about the second, wholesale contract because it is not the subject of this suit. (ECF No. 19 at 1, 2.) However, MuscleDriver's Complaint does, in fact, make allegations related to www.musclesandcurves.com and refers repeatedly to both contracts. (Compl. ¶¶ 19-22, 28, 31, ECF No. 1 at 5-8.) Therefore, to the extent that the parties' relationship grew in complexity when Smith initiated and negotiated the second contract, the history of the parties' dealings provides a more holistic view of the events giving rise to the claims, and it is further proof that Smith had full knowledge he was purposefully availing himself of the benefits of doing business here. See McNeil, 2009 WL 3255240 at *5 (discussing purposeful availment in complicated transactions and "if the transaction created some sort of ongoing obligation or relationship") (citations omitted).

---

[2] Smith argues in his reply that the proof of sales submitted by MuscleDriver "were all generated by the irrelevant wholesale site www.musclesandcurves.com." (ECF No. 19 at 2.) However, in its sur-reply, MuscleDriver points out that the invoices it had submitted with its response brief did, in fact, also include those attributed to click-through sales from www.buyweightliftingshoes.com. (ECF No. 22 at 1.)

PJG

The second part of the three-pronged test for specific jurisdiction is whether the complaint arises out of a defendant's activities in the forum. Nolan, 259 F.3d at 215-16. In this case, MuscleDriver's claims arise out of a dispute stemming from the parties' business relationship and actions following, and related to, the termination of the contracts. Specifically, the Complaint alleges that Smith refused to comply with MuscleDriver's requests to discontinue use of its product names and commercial marks on www.buyweightliftingshoes.com after termination of the affiliate contract, resulting in consumers being confused or misled about whether the website was still affiliated with MuscleDriver. Thus, the claims in this case are related to Smith's activities directed at the state, which are his contracts and communications with and about a South Carolina company.

Third, the exercise of personal jurisdiction must not "offend 'traditional notions of fair play and substantial justice.' " Int'l Shoe, 326 U.S. at 316 (citations omitted). In making this determination, courts will consider (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "the shared interest of the several States in furthering fundamental substantive social policies." World–Wide Volkswagen, 444 U.S. at 292; see also Asahi Metal Indust. Co., Ltd v. Superior Ct. of California, 480 U.S. 102, 113 (1987). Considering the factors listed above, the court finds that exercising personal jurisdiction over Smith is reasonable. In his memorandum, Smith argues that "the majority of documents, witnesses and evidence will also be located in Texas," but he fails to identify any witnesses besides himself, or explain how litigation in this forum would be burdensome to him. Based on MuscleDriver's allegations, as well as statements in Smith's declaration, it would appear that the primary evidence in the case is electronic

and accessible just as easily in South Carolina as in Texas. This state has a substantial interest in adjudicating a dispute relating to contracts with a South Carolina company, and communications that allegedly had an effect on that company and its customers, including those in South Carolina. Finally, in light of today's travel, online technology, and communication, litigating a case outside one's home jurisdiction can be efficiently managed and "has become substantially less burdensome today than it was in the past." McNeil, 2009 WL 3255240, at *6.

Consequently, the court finds that Smith has sufficient minimum contacts in South Carolina and that traditional notions of fair play and substantial justice are not offended by the exercise of personal jurisdiction over him.

**B.      Venue**

Smith also moves to dismiss based on improper venue under Federal Rule of Civil Procedure 12(b)(3), or in the alternative to transfer the action to the United States District Court, Western District of Texas, Austin Division, pursuant to 28 USC § 1406(a) or § 1404(a). In support of dismissal or transfer, Smith argues that Texas is where both defendants reside, where all the alleged acts occurred and where the majority of evidence is located. (ECF No. 14-1 at 9, 11.) MuscleDriver alleged in its Complaint that "[v]enue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because all parties do business in South Carolina, Defendants have committed wrongful acts within this judicial district, and Defendants' wrongful acts have caused injury within this judicial district." (Compl. ¶ 8, ECF No. 1 at 3.)

"To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." Mitrano v. Hawes, 377 F.3d 402, 405

(4th Cir. 2004) (citation omitted). In a federal question case such as this one, 28 U.S.C. § 1391(b) provides the applicable venue provisions:

A civil action may be brought in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Smith argues the "first criterion of 28 USC § 1391(b) dictates a finding of venue in Texas," because both defendants reside in that state. (ECF No. 14-1 at 9.) However, while the fact of defendants' residence is a basis for proper venue under the statue, it is not determinative. The use of the word "or" between the second and third subpart in the statute demonstrates the clear intent of Congress that each subpart describes an independent basis for the finding of proper venue, and the court is not constrained to find that dismissal or transfer is warranted solely on the fact of residence. Rather, "it is possible for venue to be proper in more than one judicial district." See Mitrano, 377 F.3d at 405 (discussing § 1391 and finding that, although venue would have been proper in Massachusetts where defendant resided and significant events had occurred, venue was also proper in Virginia on the basis of subpart (b)(2)); Selective Ins. Co. v. Schremmer, 465 F. Supp. 2d 524, 526 (D.S.C. 2006) ("Although Defendants assert the right to be sued in their home state 1391(a) does

PJG

not mandate such a result; the statute also says venue is proper where a 'substantial part of the events or omissions giving rise to the claim occurred.' ").

Turning then to § 1391(b)(2), Smith argues venue is not proper in South Carolina because all of the alleged acts or omissions giving rise to the claims occurred in Texas when he posted information on a website hosted in that state. In his reply, Smith contends that MuscleDriver cites to irrelevant facts to support venue, and that the Complaint is based on events that occurred only after the termination of the contracts between the parties. Therefore, Smith concludes the court should not consider any facts for venue analysis pre-dating the "moment the dispute between the parties actually began; when MuscleDriver discovered Smith's Pendlay review over which they took issue." (ECF No. 19 at 3.) However, the case cited by Smith on this point stands for the opposite proposition. See Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001) ("We look, therefore, not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim.") (citations omitted); see also Mitrano, 377 F.3d at 406 (discussing Uffner and finding the court's venue analysis should "not focus only on those matters that are in dispute or that directly led to the filing of the action.") Thus, based on the facts and analysis discussed above with regard to personal jurisdiction, the court concludes that a substantial part of the alleged events or omissions giving rise to the plaintiff's claims occurred in South Carolina.

In the alternative, Smith argues to transfer venue pursuant to 28 U.S.C. § 1404(a).[3] The court has "broad discretion to grant or deny a motion to transfer to another district." Landers v. Dawson Constr. Plant, Ltd., 201 F.3d 436 (Table), 1999 WL 991419 (4th Cir. 1999) (per curiam). "There

---

[3] To the extent that Smith argues that transfer is mandatory under 28 U.S.C. § 1406(a), that statute is not applicable in light of the court's finding that venue is proper in South Carolina.



is ordinarily a strong presumption in favor of the plaintiff's choice of forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981). Consequently, in considering a change of venue, "a district court is required to weigh the factors involved and '[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1946)) (alteration in original); see also Sw. Equip., Inc. v. Stoner & Co., No. 6:10-1765-HMH, 2010 WL 4484012, at *2 (D.S.C. Nov.1, 2010) ("Generally, a plaintiff's choice of forum will not be disturbed lightly; a defendant has a heavy burden when it moves to transfer a venue properly selected by the plaintiff.") (citation omitted).

In determining whether to exercise that discretion, "the court must consider whether venue is proper in the proposed transferee district. If the proposed venue is proper, the court then considers whether transfer is in the interest of justice and will serve the convenience of the parties and witnesses." United States v. $78,850.00 in U.S. Currency, No. 2:05-1752-PMD, 2006 WL 2384709, at *3 (D.S.C. Mar.9, 2006) (citation omitted). Moreover, transfer is not appropriate if changing venue would merely shift the burdens of litigation from one party to the other. See Stoner, 2010 WL 4484012, at *2.

The following factors are commonly considered in ruling on a motion to transfer under § 1404(a): (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice. Landers v. Dawson Constr. Plant, Ltd., 201 F.3d 436 (Table), 1999 WL 991419, at *2 (4th Cir. 1999) (citations omitted).

Page 14 of 16

*PJG*

In this case, the factors above do not warrant transfer of venue. As discussed above, although venue would be proper in Texas, the only witness identified by Smith is himself. To the extent most of the proof in this case was created on the internet, including the contract and the content posted on Smith's websites, it is electronic data which is accessible in either state. Further, MuscleDriver points out that most of the documents related to its damages, such as sales invoices, were generated and are stored in South Carolina. Moreover, MuscleDriver has identified three witnesses to its case, and there is a substantial interest in providing a forum for a South Carolina company to seek relief for alleged injuries caused by out-of-state defendants. Finally, the fact that an entry of default has already been made in this court against Defendant Web Ninjas weighs against a transfer of venue.

## RECOMMENDATION

Accordingly, the court recommends that Defendant Smith's motion (ECF No. 14) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

April 17, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).